IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFRAIN GONZALEZ,<br><br>       Petitioner,<br><br>  v.<br><br>A. P. KANE, Warden,<br><br>       Respondent.                        / | No. C 06-0420 MMC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

On January 23, 2006, petitioner Efrain Gonzalez, a California prisoner proceeding pro se, filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision by the Board of Prison Terms ("Board") denying him parole in 2003. On May 12, 2006, the Court ordered respondent Warden Kane to show cause why the petition should not be granted based on petitioner's cognizable claim for relief. Respondent filed an answer accompanied by a memorandum and exhibits, and petitioner filed a traverse. Having read and considered the parties' respective submissions, the Court rules as follows.

**BACKGROUND**

In 1985, in Madera County Superior Court, petitioner was convicted of first-degree murder. He was sentenced to a term of twenty-five years to life in state prison. On May 20, 2003, petitioner appeared before the Board for his second parole suitability hearing. At the

hearing, the Board, to establish the facts of petitioner's commitment offense, relied upon the statement of facts read into the record at petitioner's first parole suitability hearing in 2000. Petitioner did not object to the factual summary at either of his hearings, and the Court includes that summary here:[1]

> On September 23rd, 1984, at approximately 2:01 hours, Madera police department officers were dispatched to 1024 Sierra Street, City of Madera, regarding a stabbing. Upon arrival, officers observed the victim, Ramon Vasquez, lying on his back bleeding from the mouth and nose in the front room of his residence. Shortly after, the victim was pronounced dead at Madera Community Hospital. The victim died of multiple stab wounds, most of which were inflicted in the back.
>
> For identification purposes, the detectives spoke with the victim's three brothers and received a photograph of the victim with a Mexican female seated in a vehicle. The woman in the photograph was subsequently identified as Estafana Robles, . . .the prisoner's girlfriend[.] Gonzalez was described by his girlfriend as extremely jealous and a person that was very hot-headed with a violent temper.
>
> On September 26th, 1984, the prisoner was positively identified in a lineup by Alice Pacheco. Mrs. Pacheco, a friend of the victim, was inside the house when the victim opened the front door and staggered in, and she saw the prisoner standing directly from [sic] the door on the night of the homicide.
>
> The prisoner was arrested on September 25th, 1984, at his work place, at which time he falsely identified himself as Francisco Perez, son of Estafana Robles. Detectives ran a check and was [sic] advised of a felony warrant for Francisco Perez. Subsequently, the prisoner was identified, transported to the police department, and [a] complaint was filed there at justice court.

(See Answer Ex. C at 10:18-22, Ex. F (Ex. "B" at 5:2-6:8).

At the conclusion of petitioner's hearing, the Board determined petitioner was not suitable for parole and would be a risk or a danger to society if released at that time. (See id. at 30:21-24). The Board denied petitioner parole for two years.

Petitioner filed a petition for a writ of habeas corpus in the Superior Court, challenging the Board's decision. The Superior Court ruled on the petition as follows:

> In review decisions by prison officials on the Board of Prison Terms, the standard of review is the "some evidence" standard. Under the "some

---

[1] In the 2000 hearing record, the statement of facts is transcribed as one continuous paragraph of approximately one and one-half pages in length. It has been separated into shorter paragraphs for purposes of this order. Additionally, the Board's spelling the name of each individual referenced in the statement of facts, a practice followed for the assistance of the transcriber, has been omitted.

2

> evidence" standard, the official's decision will be upheld as long as there is "some basis in fact" for the decision. In re Powell (1988) 45 Cal.3d 894, 904; In re Ramirez (2001) 94 Cal. App. 4th 549, 563.
>
> The court has reviewed the record supplied by Petitioner in its entirety and finds there is evidence in the record that could support the conclusion reached by the Parole Board. "The fundamental fairness guaranteed by the Due Process Clause does not require the courts to set aside decisions of prison administrators that have some basis in fact." Superintendent v. Hill (1985) 472 U.S. 445, 455-456.
>
> Since the record contains "some basis in fact" for the decision, the petition for writ of habeas corpus is denied. In re Powell, supra, 45 Cal.3d at 904; In re Ramirez, supra, 94 Cal. App. 4th at 563. The appellate courts have applied this standard to denial of a parole release dates [sic] by the Board of Prison Terms. In re Ramirez, supra, 94 Cal. App. 4th at 563; In re Rosenkrantz (2002) 29 Cal.4th 616, 683.

(See Answer Ex. E at 2.)

Petitioner next filed a petition for a writ of habeas corpus in the California Court of Appeal, which summarily denied the petition. (See Answer Ex. F.) Petitioner then filed a petition for review in the California Supreme Court, which denied review. (See Answer Ex. G.) Petitioner thereafter filed the instant petition, in which he claims the Board violated his federal constitutional right to due process by denying him parole without sufficient evidence to support its decision.

## DISCUSSION

**A.     Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a habeas petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." See 28 U.S.C. § 2254(d). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

A decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  See Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  An "unreasonable application" of federal law occurs "if the state court identifies the correct governing legal principle from the [Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  See id. at 75.  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  Id.  "The state court's application of clearly established law must be objectively unreasonable."  Id.  An "unreasonable determination of the facts" occurs where "an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record" or "that the state court's fact-finding process was adequate."  See Taylor v. Maddox, 366 F.3d 992, 1000 (2004).

In determining whether to grant a petition, a federal court must analyze the state court's "last reasoned decision."  Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).  Here, the "last reasoned decision" is the superior court's order of January 7, 2005.  (See Answer Ex. E.)

**B.    Subject Matter Jurisdiction**

Respondent asserts that the instant petition should be dismissed for lack of subject matter jurisdiction, because petitioner has no constitutionally protected liberty interest in parole.

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when, or unless, certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest.  See Board of Pardons v. Allen, 482 U.S. 369, 376-

4

1  78 (1987) (finding Montana parole statute creates due process liberty interest in release on
2  parole); Greenholtz, 442 U.S. at 11-12 (finding Nebraska parole statute creates due process
3  liberty interest in release on parole). In such a case, a prisoner gains a legitimate expectation
4  in parole that cannot be denied without adequate procedural due process protections. See
5  Allen, 482 U.S. at 373-81; Greenholtz, 442 U.S. at 11-16. In McQuillion v. Duncan, 306
6  F.3d 895 (9th Cir. 2002), the Ninth Circuit held that, under the clearly established framework
7  of Greenholtz and Allen, "California's parole scheme gives rise to a cognizable liberty
8  interest in release on parole." See id. at 902.

9  Relying on the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995),
10 respondent argues that the Ninth Circuit improperly applied Greenholtz and Allen to find a
11 protected liberty interest in McQuillion. Respondent's argument is without merit. In Sandin,
12 the Supreme Court criticized the "mandatory language" methodology used in Greenholtz and
13 Allen, and held that, while states may under certain circumstances create liberty interests that
14 are protected by the Due Process Clause, "these interests will be generally limited to freedom
15 from restraint which . . . imposes atypical and significant hardship on the inmate in relation
16 to the ordinary incidents of prison life." 515 U.S. at 484. In McQuillion, the Ninth Circuit
17 squarely addressed, and rejected, the contention that Sandin applies to parole regulations.
18 See McQuillion, 306 F.3d at 902-04. In particular, the Ninth Circuit held: "It is clear from
19 the [Supreme] Court's framing of the problem in Sandin . . . that Sandin's holding was
20 limited to internal prison disciplinary regulations." Id. at 904; see also Sass v. California Bd.
21 of Prison Terms, 461 F.3d 1123, 1127 n.3 (9th Cir. 2006) ("Despite the government's
22 argument that [Sandin] eliminated the 'mandatory language' approach of Greenholtz and
23 Allen, the Supreme Court did not so hold and this court has consistently rejected this
24 argument.").

25 Respondent further argues that the California Supreme Court's decision in In re
26 Dannenberg, 34 Cal. 4th 1061 (2005), established that California's parole regulations do not
27 create a protected liberty interest. The Ninth Circuit rejected this argument in Sass, finding
28 Dannenberg addressed only "the narrow question whether the Board must engage in a

1  comparative proportionality analysis in setting parole dates before determining an inmate's
2  individual suitability for parole." 461 F.3d at 1128.  Consequently, the Ninth Circuit
3  concluded, "Dannenberg does not explicitly or implicitly hold that there is no constitutionally
4  protected liberty interest in parole," id., and "California inmates continue to have a liberty
5  interest in parole after [Dannenberg]," id. at 1125.

6  Accordingly, petitioner was entitled to the protections of due process at his parole
7  suitability hearing, and the Court has subject matter jurisdiction over the petition.

8  **C.     Petitioner's Claim**

9  Petitioner contends the Board violated his right to due process by denying him parole,
10 because the Board's decision was not supported by sufficient evidence.

11 According to "clearly-established" federal law, a parole board's decision must be
12 supported by "some evidence" to satisfy due process. See id. at 1128-29.  "[The] some
13 evidence standard is minimal, and assures that 'the record is not so devoid of evidence that
14 the findings of the disciplinary board were without support or otherwise arbitrary.'" Id. at
15 1129 (quoting Superintendent v. Hill, 472 U.S. 445, 457 (1985)).  "To determine whether the
16 some evidence standard is met 'does not require examination of the entire record,
17 independent assessment of the credibility of witnesses, or weighing of the evidence.'" Id. at
18 1128 (quoting Hill, 472 U.S. at 455-56.)  "Instead, the relevant question is whether there is
19 any evidence in the record that could support the conclusion reached'" by the Board.  See id.
20 (quoting Hill, 472 U.S. at 455-56.)

21 When assessing whether a state parole board's suitability determination was supported
22 by "some evidence," the Court's analysis is framed by the statutes and regulations governing
23 parole suitability determinations in the relevant state. Irons v. Carey, 505 F.3d 846, 850 (9th
24 Cir. 2007).  In California, the criteria for determining whether a life prisoner is suitable for
25 parole are set forth at title 15, § 2402, of the California Code of Regulations.  The opening
26 paragraph of § 2402(a) states: "Regardless of the length of time served, a life prisoner shall
27 be found unsuitable for and denied parole if in the judgment of the panel the prisoner will
28 pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit.

15, § 2402(a). In determining suitability for parole, the Board must consider "all relevant, reliable information" available to it. Id. § 2402(b).

Circumstances tending to indicate unsuitability for parole include whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." Id. § 2402(c). Factors to be considered in determining whether this circumstance is present include: the number of victims; whether "[t]he offense was carried out in a dispassionate and calculated manner"; whether the victim was "abused, defiled or mutilated during or after the offense"; whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering"; and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id. Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense, and serious misconduct in prison or jail. See id.

Circumstances tending to support a finding of suitability for parole include: no juvenile record; a stable social history; signs of remorse; the crime was committed as a result of significant stress in the prisoner's life; a lack of criminal history; a reduced possibility of recidivism due to the prisoner's present age; the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; and the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. See id. § 2402(d).

In the instant case, the Board's denial of parole was based in part on findings that petitioner posed an unreasonable risk of danger to public safety because of the timing and gravity of the offense. (See Answer Ex. C at 30:25.) Specifically, the Board found that the crime was carried out in a "brutal and vicious fashion," "a dispassionate manner," and a manner "which demonstrates exceptionally callous disregard for human suffering." (See Cal. Code Regs. tit. 15, § 2402(c)(2); Answer Ex. C at 30:26-31:5.) The Board also found that the motive for the crime was "inexplicable or very trivial in relationship to the offense." (Id. at 31:10-12.) Based on evidence before it that showed petitioner stabbed the victim multiple

1  times in the back, the victim never had a chance to defend himself, and the motive for the
2  murder was petitioner's jealousy over a girlfriend, there was "some evidence" to support the
3  Board's findings. (See id. at 33:25-34:9; Ex. B (Probation Report) at 2-4, 7-8.)    The
4  Board also considered petitioner's prior criminal history, see Cal. Code Regs. tit. 15, §
5  2402(b), and social history, see id. § 2402(c)(2), and based its denial of parole in part on its
6  findings that petitioner had a history of criminality and misconduct, and had spent time on
7  probation and in jail. (See Answer Ex. C at 31:17-24)  Based on evidence that petitioner
8  previously had been convicted on two separate occasions (once for drunk driving and once
9  for receiving stolen property and petty theft), had been placed on probation and spent time in
10 jail for both convictions, had been arrested for rape by force and fear, and was on probation
11 at the time of the commitment offense, there was "some evidence" to support the Board's
12 findings. (See id. at 11:22-12:12, 31:17-24, 34:10-16.)

13        The Board further considered petitioner's mental state, see Cal. Code Regs. tit. 15,
14 § 2402(b), and found he had failed to demonstrate evidence of positive change, (see Answer
15 Ex. C at 32:1-2), and needed to participate in additional self-help programs and therapy "in
16 order to face, discuss, understand, and cope with stress in a non-destructive manner, to better
17 understand the causative factors that caused [him] to be before [the Board] today." (See id.
18 at 32:25-33:3.)  This finding was supported by "some evidence."  Although a 1999 report by
19 a prison psychologist had found petitioner's potential for violence if released to be "no more
20 than the average citizen," (see id. at 20:6-10), until the 2003 Board hearing petitioner had
21 consistently denied any involvement whatsoever in the commitment offense. (See id. 11:11-
22 20.)  It was only after the evidentiary portion of the hearing concluded and the Board
23 returned to announce its decision that petitioner's counsel stated that petitioner was accepting
24 responsibility for the crime, but that "he still doesn't want to talk about the crime with the
25 Board." (See id. at 30:8-13.)  Consequently, the Board was unable to question petitioner
26 about his insight into the crime, whether he felt remorse, and the reasons why he had denied
27 involvement in the crime for the past eighteen years.  The dearth of information available to
28 the Board regarding petitioner's "past and present attitude toward the crime," see Cal. Code

8

1 Regs. tit. 15, § 2402(b), his motivation for the crime, see id. § 2402(d)(4), and any signs of
2 remorse, see id. § 2402(d)(3), constituted "some evidence" to support the Board's finding
3 that petitioner required further self-help programming and therapy before he could be found
4 suitable for parole.
5     The Board acknowledged that petitioner had been disciplinary-free for more than ten
6 years, had viable release plans, had participated regularly in Alcoholics Anonymous, had
7 completed a graphics arts vocational program, and had taken a course in disease prevention.
8 (See id. § 2402(d)(8), (9); Answer Ex. C at 32:14-17, 33:3-14.)  The Board concluded,
9 however, that "these positive aspects of [petitioner's] behavior don't outweigh the factors of
10 unsuitability at this time."  (Id. at 33:14-16.)
11     Petitioner contends the Board's reliance on the nature of the commitment offense and
12 other unchanging factors to deny him parole violates due process.  (See Pet. at 8.)  The Ninth
13 Circuit has held, however, that a denial of parole based on an unchanging factor, such as the
14 gravity of the offense, may constitute "some evidence" to justify a denial of parole.  See
15 Irons, 505 F. 3d at 853 (holding Board's sole reliance on commitment offense in denying
16 parole comported with due process); Sass, 461 F.3d at 1129 (holding Board's reliance "on
17 the gravity of [petitioner's] convicted offenses" in combination with his prior offenses
18 "constitute[d] some evidence to support the Board's determination"); Biggs v. Terhune, 334
19 F.3d 910, 916 (9th Cir. 2003) ("[T]he parole board's sole supportable reliance on the gravity
20 of the offense and conduct prior to imprisonment to justify denial of parole can be initially
21 justified as fulfilling the requirements set forth by state law.")  Although the Ninth Circuit, in
22 Biggs, stated that "[a] continued reliance in the future on an unchanging factor . . . runs
23 contrary to the rehabilitative goals espoused by the prison system and could result in a due
24 process violation," see Biggs, 334 F.3d at 917, this exception has never been applied by the
25 Ninth Circuit.  Most recently, in Irons, the Ninth Circuit noted that it has never found a
26 violation of due process where the denial of parole was based solely on the gravity of the
27 offense, and the prisoner had not yet served the minimum number of years required by his
28 sentence.  See Irons, 505 F. 3d at 853.  In the instant case, no due process violation occurred;

9

1  the Board denied parole based on the gravity of the commitment offense, petitioner's
2  criminal and social histories, and his need for further mental health treatment, and petitioner
3  had served only eighteen years of his twenty-five years-to-life sentence at the time of the
4  hearing.

5  Lastly, other circumstances presented in the instant action are not materially
6  distinguishable from those found not to warrant the granting of a habeas petition in <u>Irons</u>,
7  <u>Sass</u>, and <u>Biggs</u>.  Here, petitioner argues he had received no disciplinary or other infractions
8  for more than ten years, had made commendable achievements in various self-help and
9  vocational programs, and had viable release plans.  The petitioner in <u>Irons</u> was "extremely
10 industrious" in prison, maintained "average to exceptional job performance in every position
11 he ha[d] occupied," and "received certificates of completion in several vocational training
12 programs."  <u>See</u> <u>Irons</u>, 505 F. 3d at 849.  Likewise, in <u>Sass</u>, the petitioner displayed
13 "exemplary conduct in prison," had "detailed plans" for his release, received vocational
14 training and certificates, and "had taken college classes, for which he received all A's except
15 for one B minus."  <u>See</u> <u>Sass</u>, 461 F.3d at 1136 n.16 (Reinhardt, dissenting).  Similarly, the
16 petitioner in <u>Biggs</u> was a "model inmate," received praise from his supervisors for his "skills
17 and efforts," received certification from the FAA in two aviation programs, and earned
18 Associate's, Bachelor's and Masters in Business Administration degrees.  <u>See</u> <u>Biggs</u>, 334
19 F.3d at 912.  The Ninth Circuit nonetheless found the petitioners' accomplishments in <u>Irons</u>,
20 <u>Sass</u>, and <u>Biggs</u> insufficient to require a grant of parole.  <u>See</u> <u>Irons</u>, 505 F. 3d at 853; <u>Sass</u>,
21 461 F.3d at 1129; <u>Biggs</u>, 334 F.3d at 916.

22 In sum, the Court finds the Board had "some evidence" to support its decision to deny
23 petitioner parole, <u>see</u> <u>Sass</u>, 461 F.3d at 1129.  Moreover, the Superior Court's decision
24 upholding the Board's denial was not "contrary to" or an "unreasonable application of"
25 clearly established federal law, or "an unreasonable determination of the facts in light of the
26 evidence presented" in the state court proceedings.  <u>See</u> 28 U.S.C. § 2254(d).  Accordingly,
27 the petition for a writ of a habeas corpus will be denied.
28 //

**CONCLUSION**

For the reasons set forth above, the petition for a writ of a habeas corpus is hereby DENIED.

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: December 10, 2007

_____
MAXINE M. CHESNEY
United States District Judge